# IMPORTANT NOTICE
# <u>NOT TO BE PUBLISHED OPINION</u>

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: AUGUST 25, 2016
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2015-SC-000257-MR

WILLIAM BROCK                                                 APPELLANT

ON APPEAL FROM FAYETTE CIRCUIT COURT
V.                  HONORABLE THOMAS L. CLARK, JUDGE
NO. 12-CR-01543

COMMONWEALTH OF KENTUCKY                      APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, William Brock, pled guilty to first-degree rape, second-degree burglary, and to being a second-degree persistent felony offender. After entering his plea, but before his sentencing hearing, Brock filed a motion to withdraw his guilty plea based on new evidence. The trial court denied this motion and sentenced Brock to twenty-five years' imprisonment, pursuant to the terms of the plea agreement. Brock now appeals as a matter of right, Ky. Const. §110(2)(b), arguing that the trial court abused its discretion in denying his motion to withdraw his guilty plea.

## I. BACKGROUND

In the early-morning hours of February 16, 2012, a knock at the door awakened the fifty-two-year-old victim, who lived alone. She opened the door slightly to find a man standing outside. He asked the victim if "Lisa" was

home, and she informed him there was no one there by that name. The man then asked to use the phone, and the victim refused.

At that point, the man pushed the door open and burst into the apartment against the victim's objections. He struck the victim in the face with his fist and pressed an object he identified as a gun into her back. The man ultimately forced the victim into her bedroom, where he unsuccessfully tried to find a condom before raping and sodomizing her. Failing to find a condom, the rapist first tried to use a plastic Ziploc baggie as a prophylactic before eventually resorting to a rubber glove. When the rapist left the victim's apartment, he took the rubber glove with him, but left the baggie behind.

The victim called 911 once the rapist left. She was taken to the hospital where medical professionals collected a rape kit. Police tested the plastic baggie the rapist left at the scene and found that it matched DNA in its database belonging to Appellant, who had been paroled after serving several years in prison on a prior rape conviction. After the match, police showed the victim a photo line-up. When she came to Brock's picture, she identified him as her rapist, gasped, and said, "[i]t scares me. It's spooky to even look at him."

Brock was arrested when he visited his parole officer. He denied the incident, denied that he had ever been in the apartment, and even denied knowing the victim or recognizing her picture. However, in spite of his answers during the interrogation, Brock later asserted that his sexual encounter with the victim was consensual. He insisted the two knew one another and had met

at a bar called the Office Lounge. The victim denied any prior knowledge of Brock and denied that she had been to the bar in question. Brock's counsel had an investigator go to the bar armed with photographs in hopes of finding someone who had seen the victim and Brock together. That attempt was unsuccessful.

A Fayette County Grand Jury indicted Brock on charges of first-degree rape, first-degree burglary, two counts of first-degree sodomy, and of being a first-degree persistent felony offender. On the day his trial was set to begin, Brock pled guilty under the terms of a plea agreement reached with the Commonwealth. Under that agreement, he pled to first-degree rape, first-degree burglary, and to being a second-degree persistent felony offender. After a detailed colloquy, the trial court accepted his plea. Brock admitted to the factual predicates for each charge and did not request an *Alford* plea. Because Brock does not assert that the plea was involuntary, we need not delve into the specifics of that colloquy.

Two months later, Brock filed a motion to withdraw his guilty plea based on what he asserted constituted newly discovered evidence. Specifically, Brock attached Daisy Lindsey's affidavit in which she confirmed seeing Brock and the victim together at the Office Lounge around November 2011, some four months before the alleged rape. Brock did not argue that his plea was involuntary, but, rather, that the trial court should exercise its discretion and allow him to withdraw his guilty plea, as this newly-discovered evidence both corroborated his defense and conflicted with the victim's insistence that she did not know

3

Brock prior to the night of the alleged rape. The trial court overruled Brock's motion to withdraw his guilty plea, allowed Brock's attorney to withdraw from the case and then re-docketed the case so that any other motions could be heard prior to final sentencing.

The trial court reconsidered Brock's motion to withdraw his guilty plea on the day scheduled for final sentencing. At that hearing, Brock stated "I took my plea under duress, sir." However, the trial judge noted that he had both an independent recollection and video evidence of Brock expressly stating that he was in no way under duress at the time he entered his plea. Nevertheless, the trial court ordered an evidentiary hearing on Brock's alleged "new evidence." At this hearing, Lindsey testified that she knew the appellant and "thought" the victim was the woman she had witnessed at the Office Lounge with him, though neither the victim nor Brock had seen her. She also admitted to consuming alcohol on the night in question. The trial court ruled the evidence insufficient to justify withdrawal of the plea and sentenced Brock to twenty-five years' imprisonment, pursuant to the terms of the plea agreement.

## II. ANALYSIS

Brock argues the trial court erred in denying his motion to withdraw his guilty plea based on newly discovered evidence. Our Rules of Criminal Procedure provide that "[a]t any time before judgment the court may permit the plea of guilty or guilty but mentally ill, to be withdrawn and a plea of not guilty substituted." RCr 8.10. So long as the plea was voluntary—and we note that Brock concedes he voluntarily pled guilty in the case at bar—we "review a trial

4

court's ruling on a defendant's motion to withdraw his guilty plea only for abuse of discretion . . . ." *Bronk v. Commonwealth*, 58 S.W.3d 482, 487 (Ky. 2001).

Brock acknowledges that our Rules of Criminal Procedure do not specify a "good cause" standard for determining when a trial court has abused its discretion in denying a defendant's motion to withdraw his or her plea. However, he would have us adopt the "fair and just" standard supplied by Federal Rules of Criminal Procedure 11(d). He asserts that "[t]his would bring the standard for withdrawal of a guilty plea based on newly discovered evidence in line with the standard for new trial based on newly discovered evidence." Brock is not the first appellant to argue that we should apply the "fair and just" standard to the withdrawal of guilty pleas.[1] He is also not the first appellant to fail to preserve this issue at the trial court level. In *Commonwealth v. Pridham*, 394 S.W.3d 867, 885 (Ky. 2012), the appellant "did not present this claim to the trial court, and so it was not properly preserved for our review." We declined to address the issue further as it did not amount to palpable error. It is well settled that "appellants will not be permitted to feed one can of worms to the trial judge and another to the appellate court." *Kennedy v. Commonwealth*,

---

[1] As we pointed out in a recent, unpublished decision, "[t]his Court has mentioned this rule twice before; however, we have declined to adopt it in our criminal rules. Furthermore, our abuse of discretion standard takes into account the fairness and reasonableness of the trial court's decision making." *Britton v. Commonwealth*, No. (2013-CA-001732-MR), 2015 WL 3637486, at *3 (Ky. June 11, 2015) (footnote omitted).

544 S.W.2d 219, 222 (Ky. 1976) *overruled on other grounds by Wilburn v. Commonwealth*, 312 S.W.3d 321 (Ky. 2010). Therefore, just as in *Pridham*, we will not address Brock's contention that the trial court needed to determine whether a "fair and just" reason existed to allow him to withdraw his guilty plea. Brock failed to bring the "fair and just" standard to the trial court's attention or request its application. Thus, Brock failed to preserve his contention that "fair and just" is the appropriate standard. Brock did not request palpable error review pursuant to RCr 10.26 and we decline to address this matter further. *Shepherd v. Commonwealth*, 251 S.W.3d 309, 316 (Ky. 2008). ("Absent extreme circumstances amounting to a substantial miscarriage of justice, an appellate court will not engage in palpable error review pursuant to RCr 10.26 unless such a request is made and briefed by the appellant.").

The "fair and just" standard aside, we will continue our analysis to determine whether the trial court abused its discretion in denying Brock's motion to withdraw his plea. "The test for abuse of discretion is whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999).

Here, the trial court was in the best position to weigh the credibility of the witnesses. The trial judge did not abuse his discretion in denying Brock's motion for a new trial based upon Lindsey's affidavit and in-court testimony that she "thought" she saw Brock and the victim together at the Office Lounge several months before the victim rape. Lindsey admitted that she had known

6

Brock for several years and found out about the rape from his mother when Lindsey stopped by her home to visit Brock. Additionally, the trial judge reviewed the evidence and heard Brock's assertions that the sexual encounter was consensual. Brock's statement in support of his motion to withdraw his plea is contradicted by his statements to the police and sworn statements to the trial court. Five times during his police interrogation, Brock denied he had ever met the victim or been in her apartment. This contradicts his current statement that the victim had consensual sex with him. Brock admitted to the factual allegations underlying each of the crimes to which he pled guilty. This also contradicts his current assertion that they had consensual sex. Furthermore, the trial court saw the DNA evidence against Brock.

Given the fact that the trial judge was in the best position to evaluate the evidence and witness credibility, we cannot reverse the trial court unless we hold that it abused its discretion. Here, the trial court's decision to deny Brock's motion to withdraw his guilty plea was not "arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Id.* Therefore, we affirm.

## III. CONCLUSION

For the foregoing reasons, we affirm Appellant's convictions and corresponding sentences.

All sitting. All concur.

COUNSEL FOR APPELLANT:

SHANNON RENEE DUPREE
ASSISTANT PUBLIC ADVOCATE
DEPARTMENT OF PUBLIC ADVOCACY
5 MILL CREEK PARK, SECTION 100
FRANKFORT, KY 40601


COUNSEL FOR APPELLEE:

ANDY BESHEAR
ATTORNEY GENERAL OF KENTUCKY

KENNETH WAYNE RIGGS
ASSISSTANT ATTORNEY GENERAL
OFFICE OF THE ATTORNEY GENERAL
OFFICE OF CRIMINAL APPEALS
1024 CAPITAL CENTER DRIVE
FRANKFORT, KY 40601